Joseph O. SMIZER, Appellant
(Defendant),

v.

The STATE of Wyoming,
Appellee (Plaintiff).

No. 87–127.

Supreme Court of Wyoming.

March 29, 1988.

Wyoming Public Defender Program: Julie D. Naylor, Appellate Counsel, Cheyenne, for appellant.

Joseph B. Meyer, Atty. Gen., John W. Renneisen, Deputy Atty. Gen., Karen A. Byrne, Asst. Atty. Gen., Cheyenne, for appellee.

Before THOMAS, CARDINE, URBIGKIT and MACY, JJ., and GRANT, District Judge.

GRANT, District Judge.

Appellant Joseph O. Smizer convicted of first degree murder, § 6–2–101(a), W.S. 1977 (June 1983 Replacement), and sentenced to life imprisonment, alleges three errors on appeal: admitting the testimony of three children; admitting evidence of appellant's prior bad acts; and ruling that the evidence was sufficient to sustain the conviction of first degree murder.

We affirm.

Appellant and the victim, Marie Volcic (hereafter Marie) lived together during 1984 and 1985 with Marie's three children, Jake, Jeff and Phil. On July 10, 1985, Smizer and Marie left the house together to visit friends. Marie never was seen alive again. Before leaving, she told her children, Jeff and Jake, that she would return later that evening. As Smizer was leaving with Marie, he got a gun from under the mattress in their bedroom and took it outside, carrying it hidden next to his leg. Appellant never returned for his clothes, magazines or his dog.

The children went to bed about 8:00 p.m. and awoke the next morning trying to find their mother; Smizer had not returned. After looking around the house to see if anyone was there, they telephoned their grandparents to say their mother had not come home. The grandmother reported her daughter missing.

On May 12, 1986, Marie's decomposed body was found next to the Hams Fork River in Diamondville, Lincoln County, Wyoming, approximately six to eight blocks from where she had lived. Identification was established through dental charts. The body was obscured by tall grass and weeds, partially under bushes, and was skeletonized. Two autopsies were performed in an attempt to establish the cause of death.

The second autopsy revealed a bullet, but the pathologist was unable to determine the point of entry because the right side of the body was almost completely decomposed. The bullet in the body was .22 calibre long rifle, consistent with those manufactured by Remington/Peters and marketed with their cartridge under its trade name Viper. Its markings were consistent with those that a "High Standard" .22 Calibre Double Nine pistol would leave. It was stipulated that on October 19, 1984, appellant had purchased a "High Standard" .22 Calibre Double Nine model pistol in Green River, Wyoming.

On July 10, the day Marie disappeared, Smizer went to Green River and was there about fifteen minutes before departing with Linda Williams for Denver. He testified that he had stolen drugs from some acquaintances and wanted to get out of town before they came after him. He also testified that he told Ms. Williams he wanted to get away from Marie for a while. Smizer stayed in Denver for approximately eight months and then moved to Phoenix, Arizona, where he was arrested.

During the year between Marie's disappearance and appellant's arrest on July 10, 1986, he did not contact any of her family, nor arrange to have his things shipped to him, nor make arrangements for the care of his dog. He did not make contact with any of his friends in the Kemmerer/Diamondville area.

Smizer first contends that the trial court erred in allowing the three children to testify. Jake, age 11, Phil, age 9, and Jeff, age 8, testified describing some incidents and the relationship between appellant and their mother.

Rule 601, Wyoming Rules of Evidence, states: "Every person is competent to be a witness except as otherwise provided in these rules." In *Larsen v. State*, Wyo., 686 P.2d 583, 585 (1984), we said:

"Even before the adoption of this rule, we held that it is the duty of the court to examine a child to determine competency and that this question is left almost entirely to the sound discretion of the trial judge. *Burt v. Burt*, 48 Wyo. 19, 41 P.2d 524 (1935). * * *"

" * * *

"Intelligence, not age, is the proper criteria. 81 Am.Jur.2d Witnesses § 88. The general principle is that a person is competent if he has a sufficient understanding to receive, remember, and narrate impressions and is sensible to the obligations of the oath. 81 Am.Jur.2d Witnesses § 69 * * *." *Larsen v. State*, supra, at 585.

We adopted criteria for determining the competency of the young child as a witness:

" * * * '(1) [A]n understanding of the obligation to speak the truth on the witness stand; (2) the mental capacity at the time of the occurrence concerning which he is to testify, to receive an accurate impression of it; (3) a memory sufficient to retain an independent recollection of the occurrence; (4) the capacity to express in words his memory of the occurrence; and (5) the capacity to understand simple questions about it.' *State v. Allen*, 70 Wash.2d 690, 424 P.2d 1021 (1967), followed by *State v. Ross*, 92 Idaho 709, 449 P.2d 369 (1968)." *Larsen v. State*, supra, at 585.

In this case, the three children were extensively questioned by the prosecution, the defense and the trial court. The chil-

dren answered questions about their family; where they lived; what school they went to; what classes they were taking; what kind of grades they made; and the consequences of lying. With regard to the oldest child, Jake, the court specifically found that:

"* * * Jake is a competent witness. He is obviously intelligent. He has indicated to the Court and the Court believes that he knows the difference between telling the truth and telling a falsehood. The Court believes that he has a memory of his times in Kemmerer."

With regard to the youngest child, Jeff, the trial court found

"* * * that even though Jeff Volcic was only of the approximate age of six years on or about the time of the disappearance of his mother, he has an independent memory of some portions of that time and, you know, I have adults that I know who don't have as good a memory as Jeff. * * *"

The trial judge then stated:

"With respect to all three boys, they are able to express themselves. They understand the English language. They can speak the English language and they are able to formulate their thoughts into words. All three boys clearly have a memory of Kemmerer and Diamondville and their earlier life independent of any suggestions by Mr. Leonard [state's prosecutor] and independent of any suggestions by Mr. Thomas [defense counsel]. It's obvious from their answers that—they have independent memories because even when they weren't lead [sic], asked leading questions, they were able to give us indications of their own independent memories. In addition to that, they are quite frank with us when they do remember and when they don't remember, which is an indication of their ability to remember and is a measurement of their ability to remember.

"Finally, the boys know the difference between truth and falsity and the consequences of that. They express it in their own way. They each tell us that they get in trouble if they don't tell the truth.

And that's a simple, eight, nine or ten year old way to say it. It's not different —much different than the way a judge would say it. * * * So the Court believes that the—and so finds that all three boys in this case are competent and may be permitted to testify. * * *"

■ We agree with the trial court that inconsistencies go to the weight of the testimony, not to the admissibility. The record clearly demonstrates that, although these children were young, they were bright, aware and intelligent. We cannot find an abuse of discretion in allowing them to testify. The trial court is in a better position to judge the demeanor, truth, and veracity of a witness; therefore, we give considerable deference to the court's findings regarding such witness. *Smith v. State*, Wyo., 714 P.2d 1201, 1204 (1986).

Appellant next contends that it was error to allow testimony concerning appellant's prior bad acts. Rule 404, W.R.E., provides in pertinent part:

"(a) Character evidence generally.—Evidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion, except:

"(1) Character of Accused.—Evidence of a pertinent trait of his character offered by an accused, or by the prosecution to rebut the same;
"* * *

"(b) Other Crimes, wrongs, or acts.—Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

For evidence to be admissible at trial under Rule 404, W.R.E., it must also be relevant under Rule 402, W.R.E. Relevant evidence is defined in Rule 401, W.R.E., as "* * * evidence having any tendency to make the existence of any fact that is of consequence to the determination of the

action more probable or less probable than it would be without the evidence." Once it is determined that the evidence is relevant, it must then be determined that the probative value is substantially outweighed by the danger of unfair prejudice, confusion, or waste of time, as defined in Rule 403, W.R.E.

We previously have held that Wyoming follows the general rule that evidence of other crimes, wrongs, or acts is not normally admissible. *Bishop v. State*, Wyo., 687 P.2d 242, 245 (1984), *cert. denied* 469 U.S. 1219, 105 S.Ct. 1203, 84 L.Ed.2d 345 (1985). The rule is codified in the first sentence of Rule 404(b). In applying the second sentence of the rule, however, we have adopted a rather liberal attitude toward admitting evidence of other crimes, wrongs, or acts.

██ In this case, Marie's three sons testified about various incidents between appellant and their mother: that Smizer had told Marie that he would kill her if she left him; he had previously hit her and given her a black eye; he had pointed a gun at her; and he had hit her with a beer bottle. A barmaid testified that appellant had stated to Marie that he ought to kill her, but this testimony is not objected to on appeal. The statement at the bar occurred in early May and in late May, just prior to Marie's disappearance.

Upon objection to the testimony of the children regarding these prior acts, the trial court held an in-chambers hearing to determine admissibility. The court ruled: "The test is twofold. First of all, the Court must determine whether the testimony is relevant and if the Court determines that the testimony is relevant, then the Court must make an independent determination of whether or not, * * * the threat of unfair prejudice outweighs any probative value * * * as well as to determine whether or not the evidence would mislead the Jury * * * and [so] outweigh any probative value * * *."

The court specifically found that the testimony was relevant for the purposes of establishing motive and malice and premed-

itation by appellant in the relationship of the appellant to the victim.

As to the prejudicial effect, the court found:

"* * * [I]t is not a question of whether the testimony is prejudicial. Almost all evidence introduced by the State against the Defendant will be prejudicial. The question becomes is it unfairly prejudicial and given the nature of the contentions and the very nature of this case as outlined by Counsel in their opening statements, while this testimony may be prejudicial to Mr. Smizer [appellant], the Court doesn't believe that it is unfairly prejudicial."

The trial court went on to note that the very arguments of appellant's counsel tended to lessen the prejudicial effect of the children's testimony.

This court has recognized the exception to the Rule 404(b) exclusionary rule that evidence of other criminal activity is admissible if it

"* * * 'forms part of the history of the event or serves to enhance the natural development of the facts.' *Commonwealth v. Evans*, 343 Pa.Super. 118, 494 A.2d 383, 390 (1985); *Commonwealth v. Murphy*, 346 Pa.Super. 438, 499 A.2d 1080, 1083 (1985). * * *" *Crozier v. State*, Wyo., 723 P.2d 42, 49 (1986).

In Wyoming it has been characterized as the "course of conduct" exception. *Crozier v. State*, supra, at 49.

The admissibility of this type of evidence has been recognized in earlier cases. See *Lonquest v. State*, Wyo., 495 P.2d 575, 583, *cert. denied* 409 U.S. 1006, 93 S.Ct. 432, 34 L.Ed.2d 299 (1972); and *Alcala v. State*, Wyo., 487 P.2d 448, 455 (1971), *cert. denied* 405 U.S. 997, 92 S.Ct. 1259, 31 L.Ed.2d 466 (1972), *reh. denied* 406 U.S. 911, 92 S.Ct. 1613, 31 L.Ed.2d 823 (1972). In *Lonquest v. State*, supra, testimony was given concerning various incidents of personal violence towards the deceased and threats made by the defendant to kill her. This court affirmed the conviction stating that this evidence is relevant to show motive and malice.

More directly on point is the case of *Alcala v. State*, supra, similar in its facts to the present case. In that case, threats to the wife were properly admitted because they denoted ill-feeling and hostility which tended to prove motive and malice. There we held:

> "Inasmuch as the State was trying Alcala on a charge of second degree murder, it was entitled to offer evidence of motive and malice. It was expressly held in *Romero v. People*, Colo. [170 Colo. 234] 460 P.2d 784, 788 [1969], that in marital homicide cases any fact or circumstance relating to ill-feeling, ill-treatment, jealousy, prior assaults, personal violence, threats, or any similar conduct or attitude by the husband toward the wife are relevant to show motive and malice in such crimes." *Alcala v. State*, supra, at 455.

See also *Ortega v. State*, Wyo., 669 P.2d 935, 944 (1983). The same reasoning should apply to those similar relationships now prevalent in our society where men and women cohabitate.

■ Finally, appellant contends that the competent evidence presented to the jury was insufficient to sustain the conviction of first degree murder. Using our standard of review in *Capshaw v. State*, Wyo., 737 P.2d 740, 744–745 (1987), quoting *Dangel v. State*, Wyo., 724 P.2d 1145, 1148 (1986), we said:

> " * * * '[W]ith respect to the sufficiency of evidence when that challenge is raised in a criminal case is: "[T]his court is to examine all the evidence in the light most favorable to the state to determine if there is sufficient evidence to uphold the verdict. *Broom v. State*, Wyo., 695 P.2d 640 (1985)." *Aden v. State*, Wyo., 717 P.2d 326 (1986) at 327.' "

To the same effect is the rule set forth in *Scadden v. State*, Wyo., 732 P.2d 1036, 1052 (1987). In *Broom v. State*, Wyo., 695 P.2d 640, 642 (1985), citing *Harvey v. State*, Wyo., 596 P.2d 1386, 1387 (1979), we explained the application of the test for sufficient evidence in this way:

> " ' * * * [I]t is not whether the evidence establishes guilt beyond a reasonable

doubt for us, but rather whether it is sufficient to form the basis for a reasonable inference of guilt beyond a reasonable doubt to be drawn by the jury when the evidence is viewed in the light most favorable to the State.' [Citations.]"

The court, in *Broom v. State*, supra, at 642, went on to state:

> "It is not our function to weigh the evidence for a determination as to whether or not it is sufficient to establish guilt beyond a reasonable doubt. We have consistently held that even though it is possible to draw other inferences from the evidence presented, it is the responsibility of the jury to resolve conflicts in the evidence. * * * "

See *DeSersa v. State*, Wyo., 729 P.2d 662, 664 (1986). If there is no evidence which connects the defendant with the crime, he should be acquitted. *King v. State*, Wyo., 718 P.2d 452, 454 (1986).

The necessary elements of the crime of murder in the first degree are that: (1) the crime occurred within Lincoln County, Wyoming, on or about the date of July 10, 1985; (2) the defendant, Joseph O. Smizer, killed a human being; (3) the defendant acted purposely; (4) with premeditation; and (5) with malice.

Appellant contends basically that there is only circumstantial evidence that the victim died on or about July 10, 1985, and that he murdered her, but we have previously held that evidence, although circumstantial, is sufficient to establish the corpus delicti and defendant's connection with the crime so as to make a case for the jury.

> " * * * [E]ven where the evidence is entirely circumstantial, if it reasonably tends to prove the guilt of the accused, a verdict based thereon carries the same presumption of correctness as other verdicts and should not be disturbed unless wholly unwarranted." *Alcala v. State*, supra, at 452.

Jury instructions routinely state that evidence may be of two types: circumstantial or direct. In *Murray v. State*, Wyo., 671 P.2d 320, 328 (1983), we held that in a case in which the crime resulted in the death of the victim and there is no eyewitness or

identification of the perpetrator, circumstantial evidence is the only proof available. Thus, independent facts from which an inference of the ultimate fact to be established may rationally be drawn in the light of common experience is proper.

In the instant case, there was evidence that Smizer had threatened to kill Marie and had hit her several times in the past year; that he had said he ought to kill her; and that on the day she disappeared they left together. Although she had told her children she would return, she was not seen alive after that. As they were leaving, he took a gun from the bedroom and carried it, partially concealed, to the car. Later that day he was seen in Green River by himself; his behavior at a friend's house was unusual; and he was nervous and only stayed for ten or fifteen minutes. Appellant, by his own testimony, admitted that he left and went to Denver.

■ While opportunity alone is not enough for a conviction, evidence of opportunity is one link. Flight is also admissible as evidence of guilt. *Jones v. State,* Wyo., 568 P.2d 837, 845 (1977). Although appellant stated that he dropped Marie off at her place of employment on July 10, 1985, she was not seen there on that date. Her body was found approximately ten months later with a bullet in it, which was consistent with the type of bullet that would be used in the gun owned by appellant. There is sufficient evidence to sustain the conviction of first degree murder.

Appellant's conviction is affirmed.