Charles Malcolm VAN DUSER,
Appellant (Defendant),

v.

The STATE of Wyoming,
Appellee (Plaintiff).

No. 89–54.

Supreme Court of Wyoming.

Sept. 7, 1990.

Steven E. Weerts, Sr. Asst. Public Defender, Michael K. Cornia, Asst. Public De-

fender, and Donald K. Slaughter, Student Intern (argued), for appellant.

Joseph B. Meyer, Atty. Gen., John W. Renneisen, Deputy Atty. Gen., and Mary B. Guthrie, Sr. Asst. Atty. Gen. (argued), for appellee.

Before CARDINE, C.J.*, and THOMAS, URBIGKIT, MACY and GOLDEN, JJ.

CARDINE, Justice.

Appellant Charles Van Duser was convicted after a jury trial of one count of attempted first degree sexual assault and one count of child abuse. He states the following issues:

"1. Whether the prosecution improperly attempted to shift the burden of proof.
"2. Whether the '911' tape was admissible.
"3. Whether Appellant should be credited for time served against his maximum sentence.
"4. Whether the trial court improperly imposed post incarceration conditions in direct contravention of *Keller v. State*, 771 P.2d 379 (Wyo.1989)."

We modify the sentence and affirm.

## FACTS

After an evening of drinking, appellant drove to the victim's home where he gained access by breaking a basement window. The victim was awakened by the noise, looked around briefly, assumed her cats had caused the noise by knocking something over, and went back to bed. She was still awake when appellant appeared in her bedroom doorway, clad only in his socks. He jumped on top of the victim. She started to struggle and screamed for help. The victim's 13-year-old daughter, awakened by the noise, came to the doorway to see what was happening. Appellant grabbed the daughter and dragged her into the room by her hair. The daughter began screaming and struggling. Appellant slapped her and beat both mother and daughter. The three continued to struggle. While appellant was engaged in ripping off the victim's underwear, the daughter grabbed a can of spray deodorant and sprayed appellant in the face. After further struggle, during which the victim hit appellant in the head with a large picture frame, he left. The victim called "911," and appellant was arrested as he was driving home.

## BURDEN OF PROOF

■ In his first argument appellant complains of the following testimony elicited by the prosecutor from two employees of the state crime lab:

"Q. Okay. Just one other question. Did [the public defender], or anyone on her behalf, to your knowledge, submit any other dog or cat hairs for you to analyze?
"A. I did not examine any other cat hair or dog hair in this case.
"Q. Were you ever requested to do so?
"A. No.
"Q. Would you have been the one to do that, had they been brought into the lab?
"A. Probably.
"Q. You've done that before for defense counsel?
"A. Examine items?
"Q. Yes.
"A. Yes.
"Q. I believe the statute requires you to do that for the public defender's office, doesn't it?
"A. That's my understanding.

\* \* \* \* \* \*

"Q. Just one brief question. At the time that you were at the lab, had your office in the past conducted examinations on evidence for defense counsel?
"A. Yes, I think so.
"Q. All right. Is that required by statute, to your knowledge?
"A. I don't know.
"Q. Had they submitted anything, other than those, for testing, would you have complied and tried the test what [sic] they requested?
"A. Definitely.

*Chief Justice at time of oral argument.

"Q. Are you aware of anything else that they submitted for your test?

"A. Any item which was submitted to the lab, I did the examination.

"Q. What items [sic] was that?

"A. Any item which was submitted, and any requests which were made to the lab, I performed an examination.

"Q. And did you try each one of these items, to look for what they've indicated elsewhere?

"A. Yes.

"Q. Have you been involved in any cat litter that was tendered to your office, given to your office, for exam by defense counsel?

"A. There was not cat litter submitted by the defense."

There was no objection to this testimony at trial. Accordingly, appellant must establish that admission of the testimony constituted plain error. He must demonstrate that a clear and unequivocal rule of law was violated which denied him a substantial right, resulting in material prejudice. *Barela v. State*, 787 P.2d 82 (Wyo.1990).

Appellant contends that this testimony was an improper attempt to shift the burden of proof to the defendant. Specifically, he contends that the questions concerning whether the defense had submitted any cat hair, dog hair, or cat litter to the state crime lab for testing were improper because they informed the jury that defense had not made use of facilities to which they were entitled by law. He asserts that these questions were an impermissible "attempt to diffuse the defense argument that the dog and cat hair or the litter found on Appellant's clothing came from Appellant's home."

■ Appellant in effect argues that any testimony which tends to show that a defense argument is not supported by evidence is improper, because it implies that appellant has the burden of proving his innocence. We disagree. It is permissible for a prosecutor to elicit testimony to demonstrate a lack of evidentiary support for a theory advanced by defense, so long as the prosecutor does not suggest that defendant must testify or that defendant bears the burden of proof. *Gomez v. State*, 718 P.2d 53 (Wyo.1986). The testimony quoted above does not show that the prosecutor suggested either. No rule of law has been violated, and there is no plain error.

## 911 TAPE RECORDING

■ At trial the prosecution introduced a portion of a tape recording of a telephone call received by the Laramie County Sheriff on the "911" emergency line. The call was made by the hysterical victim as appellant was leaving her home after the attack. The prosecutor stated clearly that the tape was being offered to show the victim's state of mind at the time and to disprove consent. In addition, he stated that the recording was not offered for the truth of the statements contained on it.

Nonetheless, appellant now argues that the tape was inadmissible hearsay because there was insufficient foundation laid to introduce the tape for the purpose of rebutting a charge of recent fabrication. This argument ignores the trial record. The theory that the tape was introduced for the purpose of rebutting a charge of fabrication is apparently based solely on unsupported speculation by appellate counsel. The record plainly shows that the jury was informed that the evidence was offered to show state of mind, not for the truth of the statements contained therein. It is a fundamental principle of evidence that statements which are not offered for the truth of the matter asserted are not hearsay. *See* W.R.E. 801(c). If a statement is not hearsay under W.R.E. 801(c), it is irrelevant whether there was foundation to introduce the evidence under W.R.E. 801(d)(1)(B). Speculation about other possible uses of evidence does not change that principle. Since the tape is not hearsay under W.R.E. 801(c), appellant's basic premise is invalid, and we need not consider the argument further.

## CREDIT FOR PRESENTENCE CONFINEMENT

■ Appellant argues that he is entitled to credit against his maximum sen-

tence for presentence confinement. This court has recently considered the question of credit for presentence confinement in *Renfro v. State*, 785 P.2d 491 (Wyo.1990). For the purposes of granting credit against a prison sentence, presentence confinement is

> "incarceration for inability and failure to post bond on the offense for which the sentence is entered and does not include revoked probation or other confinement that would continue to exist without regard for bond posting capabilities in [the] particular proceeding. 785 P.2d at 498 n. 8." *Prejean v. State*, 794 P.2d 877 (Wyo. 1990).

When a sentence to a term of imprisonment is imposed, presentence confinement must be credited against both the maximum term and minimum term. *Prejean*, 794 P.2d at 878. If the defendant is incarcerated before trial for any reason other than circumstances as outlined above, the trial court may deny credit for the time incarcerated subject to two limitations. First, the maximum sentence imposed plus the time incarcerated cannot exceed the statutory maximum time. Second, for sentences entered after May 22, 1987, the minimum sentence, minus any credit given for the time incarcerated, may not exceed ninety percent of the maximum sentence minus credit, if any. *Renfro*, 785 P.2d at 498; *see also* W.S. 7–13–201. If the trial court did not specifically deny credit, either on the sentencing record or in the final sentence itself, a defendant automatically receives credit against both the minimum and the maximum. *Id.*

■ Appellant was credited with time served against the minimum sentence but not the maximum. It appears from the record that he was unable to post bond and not confined for any other reason. His incarceration falls into the category of presentence confinement under *Renfro* and *Prejean*. Therefore, the appellant is entitled to credit for time served against the maximum sentence in addition to the credit he received against the minimum sentence.

## MANDATORY PARTICIPATION IN TREATMENT PROGRAMS

■ As a part of the sentence, the trial court ordered appellant to "mandatorily participate in all available sexual therapeutic programs" while at the penitentiary. There is no statutory authority for the court to impose such a condition. In *Keller v. State*, 771 P.2d 379 (Wyo.1989), we held that a sentencing court may not impose conditions of incarceration in the absence of statutory authority. The State notes that *Keller* was decided after the imposition of this sentence but correctly concedes that it is controlling.

In light of our resolution of these last two issues, we modify the sentence to strike the paragraph concerning mandatory participation in therapeutic programs and add provision for credit against the maximum sentence for time served.

The judgment and sentence are affirmed as modified.