Robert G. McLAUGHLIN,
Appellant (Defendant),

v.

The STATE of Wyoming,
Appellee (Plaintiff).

No. 87–282.

Supreme Court of Wyoming.

Sept. 27, 1989.

Leonard D. Munker, State Public Defender and Tom Sedar, Asst. Public Defender, for appellant.

Joseph B. Meyer, Atty. Gen., John W. Renneisen, Deputy Atty. Gen., Karen A. Byrne, Sr. Asst. Atty. Gen., and Hugh Kenny, Asst. Atty. Gen., for appellee.

Before THOMAS, URBIGKIT, MACY and GOLDEN, JJ., and GRANT, District Judge.

GRANT, District Judge.

Just before 11:00 p.m., December 19, 1986, on Interstate Highway 25 near the McKinley Street exit, Casper, Wyoming, Robbyn Malone was killed when the speeding car from which she was ejected rolled over her head inflicting a massive crushing trauma. The car's driver was Robbyn's boyfriend, the father of her child, and appellant, Robert McLaughlin. Appellant was drunk.

McLaughlin was charged with violating W.S. 6–2–106(b)(ii), aggravated homicide by vehicle, which required the State to prove that he operated or drove a vehicle in a reckless manner and his conduct was the proximate cause of the death of another person. The jury that convicted McLaughlin did so on evidence that established the facts to be related below, after a statement of the issues on appeal, which issues we decide against appellant in affirming the conviction.

The trial centered around appellant's intoxication, speed (as indicated by eyewitness testimony and expert analysis of the physical facts), and cause of the rollover—all going to the issue of whether appellant's conduct amounted to recklessness which caused the accident that indisputably took Robbyn Malone's life. Appellant says the conviction must be reversed because of prosecutorial misconduct in cross-examination and argument so egregious and which the trial court's failure to control was so erroneous that it cumulatively amounts to deprivation of appellant's right to fair trial; and, therefore, to plain error. The specifics of appellant's asser-

tions and the issues raised, as well as this court's ruling on the latter, can be explained only in terms of the specific facts as developed from the trial evidence.

Appellant was home in Casper from Laramie where he had been attending a trade school. His friend, Dave Chilberg, who was visiting from California, was a passenger on the night of the accident and a witness at the trial. Chilberg had brought a large quantity of liquor as a gift to appellant but wanted to go out and hit the bars as a "warm up" before starting on the liquor. Appellant and Chilberg picked up Robbyn Malone in appellant's 1974 Datsun. The three of them, between 7:00 and 11:00 p.m., went to Bronco's where they each had a beer, a whiskey sour and a "blue blazer" (a drink made of one-half Southern Comfort and one-half Cream deMenthe), to Fran's where they each had a beer, and to Remington's where they again each consumed a beer, a whiskey sour and a blue blazer. They departed Remington's for the Avalon Club, and it was on the way there, on I–25 heading toward Douglas just beyond the McKinley Street off ramp, that the car skidded with locked wheels to the right side of the outside eastbound lane, veered left across both lanes, crashed into the "jersey barrier," skidded along the barrier, rolled once and landed on its wheels.

The section of interstate highway where the accident occurred was straight, flat, dry, well lit, and free of any obstruction or debris. The highway patrol responded and investigated. Officer Dye found appellant at the scene, apparently intoxicated. About 40 minutes after the accident a blood sample was drawn for a blood-alcohol test, which later produced a reading of .13 to .14. About 12:45 a.m., appellant was arrested and charged. At his trial, almost everything was contested.

There are several areas of evidence and conflict therein significant to the issues. They arise chiefly out of the respective parties' expert testimony interpreting the physical facts, the qualification, credentials and motives of the defense expert, the amount of alcohol consumed by appellant and the witness Chilberg, the relationship between blood-alcohol level and degree of alcohol-induced impairment, speed of the vehicle at the time of the accident and how these things relate to the issue of appellant's recklessness.

## Discussion

Appellant was charged under W.S. 6–2–106(b)(ii) and convicted of aggravated homicide by vehicle. Appellant seeks to overturn that conviction based on alleged prosecutorial misconduct denying his right to a fair trial. Three aspects of misconduct are alleged:

I. The cumulative effect of the prosecutor's misconduct during cross-examination and closing argument,

II. Repeated misconduct coupled with the judge's failure to control it, and

III. Repeated intentional misconduct requiring a mistrial as a punitive measure.

Appellant's first argument is that the cumulative effect of the prosecutor's misconduct was sufficient to deny a fair trial. Although appellant argues several individual instances of misconduct, his primary concerns are (1) a question asked of his witness, Chilberg, during recross-examination, and (2) the substance of the prosecution's closing argument.

We first examine the prosecutor's question to David Chilberg, the only other witness to the accident. In recross-examination, the prosecutor asked Chilberg:

Sir, you don't feel you were intoxicated even though your blood alcohol level was .13 at the Hospital?

In fact, although he had been drinking, Chilberg was not tested for blood-alcohol content. Only appellant had been so tested, and that result was .13. Defense counsel objected. The court sustained the objection, striking the question and instructing the jury to disregard the answer. Appellant characterizes this incident as an intentional statement of fact not in the record and asserts that this violated his right to a fair trial. He bases this on a "cat out of the bag syndrome," apparently meaning that instruction to disregard the answer is not enough.

Although the question was also stricken, appellant claims the question leaves the impression contrary to fact—that Chilberg's blood-alcohol level was established in evidence. The State argues the testimony was overwhelming that Mr. Chilberg had been drinking at least as much as appellant, and so any reference to Chilberg's blood alcohol should be considered harmless error.

This court considered an improper question asked in a murder trial many years ago in *State v. Sorrentino*, 31 Wyo. 129, 224 P. 420 (1924). There the prosecuting attorney asked the defendant about a prior crime. An objection was made and sustained, and a claim of misconduct was presented. The court said there was no doubt that the question assumed an affirmative fact that defendant was guilty of a different crime not connected with the immediate crime.

The Supreme Court of Pennsylvania, in *Wagner v. Hazle Twp.*, 215 Pa. 219, 225, 64 Atl. 405, 407 [1906] speaking of a similar situation says:

"When an attorney in the trial of a cause willfully and intentionally makes an offer of wholly irrelevant and incompetent evidence, * * * it is the plain duty of the trial judge, of his own motion, to act promptly and effectively by reprimanding counsel * * *."

* * * Such misconduct cannot, however, be considered sufficient to require the granting of a new trial in all cases. It is said in 8 Cal.Jur. § 604:

"Misconduct of the district attorney in asking improper questions is ground for reversal when it results in miscarriage of justice, but not otherwise."

*Sorrentino*, 224 P. at 425. Although the question insinuated defendant's connection with the activity leading to the murder, other testimony had been properly introduced on that point. The question under consideration was, at most, cumulative in its effect. The court concluded that, in view of all the evidence, the question could not have had sufficient influence on the jury to materially affect their conclusion in reaching a verdict of manslaughter.

A more recent case involved a cross-examination question about settlement efforts. No objection was made until the subject again came up in redirect. The court properly exercised its discretion and correctly instructed the jury to disregard that evidence.

We must assume that the jury followed the court's corrective instruction that the evidence * * * was irrelevant. The court's corrective instruction cured whatever error occurred by the improper questioning and answer that slipped into the record.

*Hursh Agency, Inc. v. Wigwam Homes, Inc.*, 664 P.2d 27, 36 (Wyo.1983) (citations omitted).

In the instant case, the trial judge ordered the question to Chilberg stricken and instructed the jury. We must assume the jury followed the instruction. In view of all the evidence, this one incident is unlikely to have affected the conviction.

"[A] criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments standing alone, for the statements or conduct must be viewed in context; only by doing so can it be determined whether the prosecutor's conduct affected the fairness of the trial."

*Story v. State*, 721 P.2d 1020, 1044 (Wyo. 1986) (quoting *United States v. Young*, 470 U.S. 1, 105 S.Ct. 1038, 1044, 84 L.Ed.2d 1 (1985)).

### Closing Argument

The remainder of appellant's first argument focuses on the added cumulative effect of misconduct in the prosecutor's closing argument. Specifically, appellant refers to "unsubstantiated testimony by the prosecutor," the prosecutor's "attack" on defendant's expert witness, and the use of social comment to "inflame" the jury. Appellant offers a number of examples (discussed below) which he insists are misconduct.

To begin, we state unequivocally that there was no misconduct in this case. A prosecutor cannot urge upon the jury his personal belief or opinion. *Barnes v. State*, 642 P.2d 1263 (Wyo.1982). How-

ever, he is not precluded from commenting on evidence and presenting inferences that logically follow from the evidence. *Wheeler v. State*, 691 P.2d 599 (Wyo.1984). We review the entire context of the closing argument, as well as the trial testimony and evidence, to determine whether the prosecutor's review of the evidence and comments about it were unsubstantiated by the record.

■ The prosecutor began his argument declaring:

It is only fair to say that what I say and what Mr. Raymond says is not evidence. You are the ones that have to remember what you have heard. * * * You have to resolve the testimony on your own.

He went on to say:

[T]he number one contributing human cause of this accident in this wreck, this crash, this collision, basically this killing, is alcohol.

Appellant asserts there is *no* evidence whatsoever presented during the trial or in the record to support that statement. However, appellant (here, as in other instances) takes out of context and ignores the remainder of the prosecutor's statement:

We have had diagrams and disagreements and all sorts of things, and hours and hours of testimony, but since day one, since the day that Officer Dye filled out that report—and you heard his testimony—the number one contributing human cause of this accident in this wreck, this crash, this collision, basically this killing, is alcohol.

(It was undisputed that Mr. McLaughlin had been drinking and had consumed a substantial amount of alcohol.)

The appellant also assails another statement as unsupported opinion:

Mr. McLaughlin * * * that night was not safe to be operating at any speed. * * * [He] engaged in a totally unexplainable disastrous reaction to an object, real or imagined, he does not know, and that even after he perceived and reacted to that, he continued to be unable to make accurate judgments about driving a motor vehicle.

This is not an unreasonable inference from the testimony and, again, including the rest of this statement, the prosecutor adds:

It fits in * * * because it is obvious from any testimony, whether you believe one side or the other [that Mr. McLaughlin's reaction to an object was not fully explainable].

A last example, prosecutor:

[W]e know that Robert McLaughlin was thinking rationally as soon as he talked to Officer Lauderdale.

Again, appellant ignores the remainder of the summarized testimony.

Remember the context of the statement. "I can tell you what happened." (Quoting appellant's testimony.)

■ Appellant further characterizes the prosecutor's use of social comment as inflammatory, believing that reference to media exposure about problems of drinking and driving is objectionable. Prosecutor:

We have a problem in our country with the drinking driver and we must consider this case on its own facts. But the fact remains that you cannot ignore the constant media publications that the average person is exposed to concerning the dangers of drinking and driving as relates to whether they know that is dangerous.

The court recognizes the validity of appellant's proposition that an argument may not inflame passion and prejudice of the jury. *Jeschke v. State*, 642 P.2d 1298 (Wyo.1982). But, appellant ignores the sentence following the statement, which states:

And in your reasonable backgrounds and your own reasonable experiences, do you believe that a reasonable person would not know that eight drinks was a dangerous amount to get out there behind the [wheel] and go down the highway? And go down the highway at what speed?

Reviewed in context, this is not inflammatory. It is permissible to refer to well-known facts from the public press or argue matters of common knowledge, 75 Am.

Jur.2d, *Trial*, § 252 (1974). It is not unreasonable to infer from the testimony that drinking and driving do not mix well.

■ As to remarks about appellant's expert witness, appellant predictably describes this also as inflammatory, inconsistent with the testimony, and an expression of the prosecutor's opinion that the expert witness is, in fact, a "professional witness." Among other things, appellant claims the prosecutor misstated testimony and maligned the witness' reputation. For example, appellant says the prosecutor's statement about the expert witness (Crawford) having been in more courtrooms than both lawyers put together has no factual basis, was unsupported by the record, and was expressed with the sole purpose of painting Mr. Crawford in an unfavorable light. Apparently Mr. Crawford's testimony that he has been qualified as an expert in court cases before and his answer, "I think I have probably testified 300 times," has no significance for appellant.

Appellant also attacks the prosecutor's statements, paraphrasing Crawford's testimony about Officer Dye's measurements at the scene of the accident. Crawford testified there were a number of mistakes in Dye's measurements. Although he argues that the prosecutor's remarks went beyond acceptable characterization about this complicated testimony, appellant did not object at the time. The testimony was clear that Mr. Crawford's expert opinion was based on analysis of photographs and diagrams. He had not been to the site of the accident. Officer Dye's measurements and calculations were based on information obtained at the site of the accident.

It is clear the above remarks do not constitute misconduct. We further compare the argument to that in *Freeze v. State*, 662 P.2d 415 (Wyo.1983). There, defendant/appellant challenged the prosecutor's closing argument claiming the prosecutor was attesting to the credibility of a witness, giving his personal belief as to the weight of the evidence, and expressing personal belief as to defendant's guilt. The court called appellant's contentions misleading and considered them within the to-

tal context of the prosecutor's argument when reviewing defendant's testimony. For example:

[T]he prosecutor went into other inconsistencies *not* included as offensive by appellant but worth repeating as illustrative of how misleading are appellant's contentions:

\*      \*      \*      \*      \*      \*

" \* \* \* the defendant in his testimony stated that he chased these 3 boys and then turned around. Remember direct by Miss Botham, and he said, well, no, no, I really didn't chase the boys, I only followed them. You make up your mind what he did. He doesn't know what he did, at least he wants you to think either that or so confused by it that he is not sure."

\*      \*      \*      \*      \*      \*

"One thing he [appellant] said to me [on cross-examination], you know, sorry for what he did and sorry for any trouble he may have caused this girl. Part of this testimony here. Would a man be sorry for something that he didn't do, sorry for the trouble that he was in, if he didn't do any trouble? \* \* \*

"All of the things he said that he does not know at this time, what is actually the truth? He has built this up, told so many different stories, he can't keep them straight."

As the prosecutor was closing his argument in chief, we point out he again explained to the jury:

" \* \* \* We want you to base your decision on the evidence that you have heard here, not on speculation or conjecture but on the evidence you in fact have heard from that witness stand, not what I have said, but what the witnesses said, and want you to look at all the evidence, \* \* \*."

*Freeze*, 662 P.2d at 417–18 (citations omitted). The court's review of the transcript of that closing argument convinced it that the prosecutor was honest and straightforward with the jury, performing the function of closing argument, commenting on the evidence which he has every right to

do. He carefully left the credibility of the witness and the state of the evidence to the jury.

We also considered alleged prosecutorial misconduct in *Jeschke*, 642 P.2d at 1301. The prosecutor said, "I think he beat him unmercifully. I think that's what those bruises are," referring to injuries during prosecution for involuntary manslaughter of a small child. There was no objection at the time of the comments, and further examination of the record revealed the prosecutor prefaced his comments with an admonishment that he was submitting the State's theory of the case. A prosecutor may comment on the evidence and draw reasonable inferences, it being the purpose of closing argument to explain the significance of evidence and how it should be viewed. The comments were well within the latitude given prosecutors in presenting the State's case.

This court recognizes that a prosecuting attorney may draw all legitimate inferences from the evidence:

> "Closing arguments are meant to be just that, arguments premised upon the evidence already submitted to the jury. Prosecutors are no more limited in their closing than defense counsel. *They may review the evidence and suggest to the jury inferences based thereon.* The purpose of closing arguments is to allow counsel to offer ways of viewing the significance of the evidence. However, there are limits, not only on prosecutors, but on all attorneys."

*Schmunk v. State*, 714 P.2d 724, 742 (Wyo. 1986) (quoting *Browder v. State*, 639 P.2d 889, 893 (Wyo.1982) (emphasis in original)).

Generally an expression of knowledge, opinion, or belief not based upon or shown by the evidence at trial, either expressly or inferentially, is improper and prejudicial error. *Schmunk*, 714 P.2d 724.

If there was misconduct shown, serious and appropriate measures are required. In *Berger v. United States*, 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314 (1935), a prosecuting attorney clearly overstepped the bounds of propriety and fairness which should characterize the conduct of such an officer in the prosecution of a criminal offense. He was guilty of misstating facts in his cross-examination of witnesses, assuming prejudicial facts not in evidence, and many other instances of reprehensible conduct. Although objections were sustained and the jury instructed to disregard these misstatements and questions, sterner measures were called for. The case against defendant Berger was weak, and in the circumstances, prejudice to his cause was so highly probable that its nonexistence could not be assumed. If the case against Berger had been strong or evidence of his guilt overwhelming, a different conclusion might be reached. Moreover, the misconduct of the prosecuting attorney was not slight but pronounced and persistent with a probable cumulative effect on the jury which cannot be disregarded as inconsequential. A new trial was awarded.

Appellant in the case at bar repeatedly insists statements made by the prosecutor are unsupported by the evidence. He further claims there is *no* evidence in the trial record to support any statement about a connection between alcohol and the crash. He apparently sees no connection between extensive testimony about the amount of alcohol consumed and the cause of the accident. The prosecutor is not prohibited from arguing inferences which follow from the evidence. The testimony about the amount of alcohol consumed by appellant, the condition of his car, his claim of having swerved to avoid a possible unknown object in the road and the differing opinions about the speed of the car, all contribute to a reasonable inference that alcohol was a substantial contributing factor to the cause of this accident. Proper argument cannot be transformed into misconduct by hysterical and repeated assertions that it is improper argument.

Appellant searches for and isolates individual sentences in the transcript of the argument, pouncing on each as evidence of misconduct. We have reviewed the complete closing in the context of all the evidence. In so doing, we cannot escape the observation that, were appellant's charges

of misconduct by trial counsel valid, he might be subject to the same criticisms.

In appellant's argument, he urges the jury to discount or disregard the testimony of the witness who observed and gave testimony describing appellant's driving just prior to the accident and to consider the defense evidence concerning speed, rather than "relying on [the State witness'] mumbo jumbo of skids." He characterized the patrolman's opinion as a "house of cards." His argument referred to his testimony as having been that "something ran across the road," whereas his actual testimony was, "I remember driving down the highway and seeing something."

Appellant might well consider these observations about his own argument *de minimis*, and so they are. The point is that for the most part they are of the same caliber as those he makes of the prosecutor's argument and upon which he bases his plea for reversal. But even if one assumes that some of the State's argument was outside acceptable standards, it would leave appellant some distance from meeting the requirements necessary for reversal.

▮ The Wyoming Supreme Court has said that misconduct alone does not justify reversal. A party alleging prosecutorial misconduct has the burden of proving that he was substantially prejudiced by any misconduct that might have taken place. *Story*, 721 P.2d at 1020.

Appellant carries a heavy burden when no objection is made at trial to comments in closing argument. This court has repeatedly said, "objection should be made at the time of the allegedly prejudicial comment in order that the trial court will have the opportunity to take corrective measures." *Wheeler*, 691 P.2d at 604. Except for the objection to the question in cross-examination, "[a]pparently the first time it dawned on appellant that he had been prejudiced was when he wrote his appellate brief." *Browder v. State*, 639 P.2d 889, 899 (Wyo.1982) (Brown, J., dissenting).

▮ When no objection is timely lodged, the plain error standard must be applied. Plain error or defects affecting substantial rights may be noticed although not brought to the attention of the court through objection. W.R.A.P. 7.05. To invoke the plain error doctrine, several elements must be established:

First, the record must clearly show what occurred at the trial without resort to speculation. Second, the existence of a clear and unequivocal rule of law must have been violated in an obvious way. And, finally, this violation must have adversely affected some substantial right of the accused.

*Browder*, 639 P.2d at 895.

The facts of the case must be viewed in light of the trial record as a whole and not as to whether any one single incident standing alone would be reversible. This cumulative effect approach has been applied in numerous cases. *See Browder*, 639 P.2d 889; *Berger*, 295 U.S. 78, 55 S.Ct. 629; and *Wheeler*, 691 P.2d 599.

The right at stake is the fundamental right to a fair trial, free from tainted argument. Reviewed as a whole, the argument in appellant's trial did not affect that right. Prosecutors must always keep in mind that their duty is to seek justice, not merely to convict, which is most certainly a difficult duty to be carried out carefully and cautiously. *Jeschke*, 642 P.2d at 1303. Viewing the entire circumstances of the argument and trial testimony in appellant's case, it is clear there is no prejudice and no error.

### Remedy

Appellant further requests that we overrule *Jones v. State*, 580 P.2d 1150 (Wyo. 1978). That case was about murder and prosecutorial misconduct. One improper statement made in closing was immediately remedied by the court. There was no objection to another questionable statement which misstated the law. Appellant then asked for reversal under the plain-error doctrine. The court said:

A reversal and remand for a new trial—because of prosecutorial misconduct—will not be ordered as *punishment* for a prosecutor's misdeeds, but only because

such misdeeds denied the accused a fair trial.

*Id.* at 1154 (emphasis added).

Where there is no prejudice to a defendant, clearly there is no plain error warranting a new trial. Appellant has no grounds to request reversal as a punitive measure when no prejudice to appellant's rights was shown.

Affirmed.