2002 WY 71

**Juan BURTON, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

**No. 00–281.**

Supreme Court of Wyoming.

May 14, 2002.

Rehearing Denied June 18, 2002.

---

**310**

Kenneth Koski, Public Defender; Donna Domonkos, Appellate Counsel; Tina Kerin, Assistant Appellate Counsel; Diane E. Courselle, Director, Defender Aid Program; Kimberly Grosshuesch, Student Intern; and Amanda Wilson, Student Intern, Representing Appellant. Argument by Ms. Wilson.

Gay Woodhouse, Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Georgia L. Tibbetts, Senior Assistant Attorney General; Devon O'Connell Coleman, Interim Faculty Director, Prosecution Assistance Clinic; and Denise A. Timmermans, Student Intern, Representing Appellee. Argument by Ms. Timmermans.

Before LEHMAN, C.J., and GOLDEN, HILL, KITE, and VOIGT, JJ.

LEHMAN, Chief Justice.

[¶ 1] Appellant Juan Burton appeals from his conviction for taking indecent liberties with a child, in violation of Wyo. Stat. Ann. § 14-3-105 (LexisNexis 2001). He claims that he is entitled to have his conviction reversed because the prosecutor engaged in misconduct in his closing argument and elicited improper opinion testimony from a detective who investigated the case. In addition, Burton claims that the trial court erred by allowing the State to amend the information just prior to the trial to change the date of the charged offenses.

[¶ 2] We affirm.

### ISSUES

[¶ 3] Burton presents the following issues on appeal:

I. Did plain error occur when the trial court allowed the prosecutor's closing arguments to prey upon jury passion and prejudice, mislead the jury as to the facts and the law, introduce issues outside of the charges, use bad character evidence, attack defense counsel's trial strategy, and vouch for the witnesses' credibility; the trial court also abused its discretion when it denied Mr. Burton's motion for a new trial in spite of the highly prejudicial prosecutorial comments made in closing argument?

II. Did the trial court err when it permitted the prosecution to elicit opinions from the State's witness about the credibility of another witness?

III. Did the [trial] court abuse its discretion by allowing an untimely amendment of the information to change the date of the charged crime, which resulted in prejudice to Mr. Burton?

### FACTS

[¶ 4] Eighteen-year-old Kara Jess moved to Casper during the summer of 1998. She initially lived with a friend but moved out of their shared apartment after a disagreement and began living in her car. Jess met Burton and moved into his apartment. Burton was thirty-six years old at the time. Shortly thereafter, Jess became acquainted with the victim, who was a sixteen-year-old female high school student. Jess introduced the victim to Burton.

[¶ 5] On August 28, 1998, Jess picked the victim up at school, and they went to Burton's apartment. Burton, Jess, and the victim listened to music and used illegal drugs. Later in the day, Jess and the victim went to Lucas Edwards' apartment, which was located in the same apartment complex. Jess, Edwards, and the victim spent the evening drinking alcoholic beverages, listening to music, and watching movies. The victim eventually passed out on a blow-up couch in Edwards' living room. She later moved to a nearby bed to sleep.

[¶ 6] According to the victim, Burton came to Edward's apartment and told her that she could sleep at his apartment. The

victim went to Burton's apartment, alone, and lay down to sleep on the floor in a large closet, which was where Burton usually slept. The victim testified that, sometime during the night, Burton returned to the apartment and lay down beside her in the closet. She awoke later to find Burton's hand on her stomach. The victim told Burton to leave and went back to sleep. Throughout the night, the victim floated in and out of consciousness. Each time she awoke, she found Burton making increasingly more invasive sexual contact with her. The victim resisted by telling Burton that she was not interested in his advances, rolling away from him, and pushing his hand away. According to her testimony, he eventually engaged in sexual intercourse with her.

[¶ 7] The next morning, the victim returned to Edward's apartment and spoke to Jess and Edwards. She told them that Burton "was trying to do stuff with her" and that she thought that she had been raped. Edwards testified that he confronted Burton about the victim's claim and Burton denied that he had raped her, but admitted that he had touched her genitals.

[¶ 8] A few weeks later, the victim and her mother had an argument about the victim's rebellious behavior. During that argument, the victim's mother asked her why she was behaving badly and the victim told her mother that she had been raped. Her mother called the police and reported the incident.

[¶ 9] Burton was charged with first degree sexual assault and taking indecent liberties with a child. Burton pled not guilty, and the trial court held a jury trial in September of 1999. At the conclusion of the trial, the jury returned a verdict finding Burton not guilty of first-degree sexual assault and guilty of taking indecent liberties with a child. Burton filed a motion for judgment of acquittal and a motion for a new trial. He claimed, in his motion for a new trial, that he had not received a fair trial because certain comments made by the prosecutor during his closing argument were improper and prejudicial. The trial court denied Burton's motions and, subsequently, entered a judgment and sentence against him. Burton appealed to the Wyoming Supreme Court. Additional facts relevant to specific issues will be set forth in our discussion of those issues.

## DISCUSSION

### A. Prosecutorial Misconduct in Closing Argument

[¶ 10] Burton contends that the trial court erred by allowing the prosecutor to make various improper comments during his closing argument. The State insists that the prosecutor's comments were appropriate and that, in any event, Burton was not prejudiced by the remarks.

#### 1. Standard of Review

■■■■ [¶ 11] In reviewing a claim of prosecutorial misconduct in closing argument, the court looks at the entire record to determine whether the defendant's case was so prejudiced by the improper comments as to result in the denial of a fair trial. *Capshaw v. State*, 10 P.3d 560, 567 (Wyo.2000); *Metzger v. State*, 4 P.3d 901, 910 (Wyo.2000). The challenged comments are judged in the context of the prosecutor's entire argument, considering the context of the statements and comparing them with the evidence produced at the trial. *Helm v. State*, 1 P.3d 635, 639 (Wyo.2000).

■■■■ [¶ 12] Appellant objected to the first statement addressed herein, and the trial court sustained his objection. Appellant also renewed his objection after the trial by filing a motion for a new trial. When an objection is launched to a statement made in closing argument, we defer to the trial court's ruling in the absence of a clear or patent abuse of discretion. *Gayler v. State*, 957 P.2d 855, 860 (Wyo.1998). Even then, reversal is not warranted unless a reasonable probability exists, absent the error, that the appellant may have enjoyed a more favorable verdict. *Gayler*, at 860. *See also Metzger*, 4 P.3d at 910. Similarly, the Wyoming Supreme Court reviews a trial court's decision to deny a motion for a new trial by applying the abuse of discretion standard. *Marquez v. State*, 12 P.3d 711, 718 (Wyo.2000).

■■■■ [¶ 13] Burton did not object to the remainder of the challenged statements at trial; consequently, we review his claims by

applying the plain error standard. *Lane v. State*, 12 P.3d 1057, 1064 (Wyo.2000). To demonstrate plain error, Burton "must show that the record clearly shows an error that transgressed a clear and unequivocal rule of law which adversely affected a substantial right." *Taylor v. State*, 2001 WY 13, ¶ 16, 17 P.3d 715, ¶ 16 (Wyo.2001). Reversal of a conviction on the basis of prosecutorial misconduct, which was not challenged in the trial court, is appropriate only when there is "a substantial risk of a miscarriage of justice." *Capshaw*, 10 P.3d at 567 (quoting *Dice v. State*, 825 P.2d 379, 384 (Wyo.1992)).

### 2. Comments Emphasizing Burton's Drug Use and Appealing to Community Sentiment

[¶ 14] Burton claims that the prosecutor improperly emphasized his drug involvement and appealed to community sentiment in the following exchange:

[PROSECUTOR]: Ladies and gentlemen, the State understands that we have just introduced to you a completely and— hopefully, an unknown world that's going on out there right here in your community. It's the drug world.

You heard a lot of testimony about these young kids and the behavior that they were involved with. But ask yourself, ladies and gentlemen, would they ever get the opportunity to be doing these kinds of things if not for the likes of the Juan Burtons of the world?

[DEFENSE COUNSEL]: Your Honor, I'm going to object to that. I think that's objectionable.

THE COURT: I think it is, and it's extremely improper. I'll sustain the objection. The jury should disregard that.

[¶ 15] In closing argument, counsel may reflect upon the evidence admitted at trial and draw reasonable inferences from that evidence. *Gayler*, 957 at 861; *Armstrong v. State*, 826 P.2d 1106, 1116 (Wyo. 1992). Arguments which are calculated to appeal to the jury's prejudice or passion are improper because they pose a risk that the accused may be convicted for reasons wholly irrelevant to his guilt or innocence. *Gayler*, 957 P.2d at 861; *Armstrong*, 826 P.2d at 1116. Accordingly, it is improper for a prosecutor to encourage the jury to convict a defendant in order to protect the community rather than upon the evidence presented at trial. *See e.g., Gayler*, 957 P.2d at 860–62.

[¶ 16] In this case, the prosecutor stated that the jury had heard evidence about the drug world in Casper. The victim, Kara Jess, and Lucas Edwards all testified about various drug-related activities in which they were involved. The prosecutor's comment was, therefore, appropriate because it was a reasonable restatement of the evidence presented at trial.

[¶ 17] The prosecutor's remark suggesting that the kids would not have access to drugs if it were not for the "Juan Burtons" of the world is another matter. The trial judge apparently believed that the prosecutor's comment was improper because he sustained defense counsel's objection and instructed the jury to disregard the statement. Nevertheless, the trial court judge denied Burton's motion for a new trial. In denying Burton's motion, the trial judge noted that the comment was isolated and that he had sustained Burton's objection to the comment and instructed the jury to disregard it. The trial judge also stated that Burton had not shown that he was prejudiced by the comment.

[¶ 18] Pursuant to W.R.Cr.P. 33, the trial court may grant a new trial if it is "required in the interest of justice." Even if we assume that the prosecutor's comment was improper, we conclude that the trial court did not abuse its discretion when it denied Burton's motion for a new trial. The trial court properly sustained defense counsel's objection and instructed the jury to disregard the improper argument. In the absence of any indication to the contrary, "[w]e must assume that the jury followed the court's curative instruction." *Marquez*, 12 P.3d at 717 (quoting *Burke v. State*, 746 P.2d 852, 857 (Wyo.1987)). The prosecutor respected the trial court's ruling and did not return to the inappropriate line of argument. Thus, the prosecutor's conduct was not so egregious as to require a new trial in the interests of justice, and the trial court did not

abuse its discretion by refusing to grant Burton's motion for a new trial.

[¶ 19] On a related matter, Burton argues that the prosecutor made an improper appeal to community sentiment when he stated: "You ladies and gentlemen have the opportunity, the power to say that we are going to protect kids like [the victim] in our community." Burton did not, however, object to this comment; consequently, we will apply our plain error standard in reviewing his claim on appeal.

[¶ 20] As we stated, *supra,* it is inappropriate for a prosecutor to appeal to the jury's passion and prejudice and encourage the jury to convict to protect the community rather than upon the evidence presented at trial. *See e.g., Gayler,* 957 P.2d at 860–62. A prosecutor may, however, remark that conviction of the accused will have the incidental effect of protecting the community if he does not urge the jury to convict on a basis other than the evidence against the accused. *See Hodgins v. State,* 962 P.2d 153, 158 (Wyo. 1998).

[¶ 21] The challenged comment was part of a larger point being advanced by the prosecutor:

> You ladies and gentleman have the opportunity, the power to say that we are going to protect kids like [the victim] in our community. The State wishes that we could have introduced to you a victim that was on the honor roll, that was the best athlete on the volleyball team, and that was the A–1 American kid of the world.
>
> But we are never going to see those kind of kids testifying to the things that [the victim] had to testify to. Because those aren't the kind of kids that find themselves in that situation.

[¶ 22] When reviewed in context, it is apparent that the prosecutor was not asking the jury to convict Burton on any basis other than the specific evidence that he sexually assaulted the victim. The prosecutor was simply pointing out that the victim was, because of her lifestyle, especially susceptible to Burton's inappropriate advances and that children in her situation are in need of protection. This argument was not an improper appeal to community sentiment. Burton has not, therefore, satisfied the second prong of the plain error analysis because he has not shown a transgression of a clear and unequivocal rule of law.

### 3. Description of the Crime of Taking Indecent Liberties with a Child

[¶ 23] Burton claims that the prosecutor committed misconduct in his closing statement when he incorrectly described the crime of indecent liberties and improperly equated drug use with taking indecent liberties with a child under Wyo. Stat. Ann. § 14–3–105 (LexisNexis 2001). The prosecutor stated:

> [PROSECUTOR]: Ladies and Gentlemen, before you go back into that room and deliberate, take a long, hard look at the defendant, Juan Burton, and mentally place him next to Kara Jess, [the victim], and Lucas Edwards and ask yourself: What was he doing with these kids?
>
> Is it a man who is just providing drugs for them? Or is it a man who's trying to totally control them? And does he have improper, immoral and indecent motives by being involved with these young kids?

Burton also asserts that the prosecutor committed further misconduct and attempted to inject issues, other than the issue of his guilt or innocence, into the trial when he made the following statements:

> [Burton] is the adult with the responsibility in not providing [the minors] a place to do drugs, not providing them with the drugs. He is the adult, ladies and gentlemen, that is not supposed to take indecent liberties with a child.

[¶ 24] The crime of taking indecent liberties with a child is set out in Wyo. Stat. Ann. § 14–3–105(a) (LexisNexis 2001):

> (a) Except under circumstance constituting sexual assault in the first, second or third degree as defined by W.S. 6–2–302 through 6–2–304, any person knowingly taking immodest, immoral or indecent liberties with any child or knowingly causing or encouraging any child to cause or encourage another child to commit with him any immoral or indecent act is guilty of a

felony. Except as provided by subsection (b) of this section, a person convicted under this section shall be fined not less than one hundred dollars ($100.00) nor more than one thousand dollars ($1,000.00) or imprisoned in the penitentiary not more than ten (10) years, or both.

The trial court instructed the jury on the elements of the crime of taking indecent liberties with a child in accordance with § 14–3–105(a). Burton suggests that the court should have defined the phrase "immodest, immoral or indecent liberties" for the jury. This court has, however, repeatedly refused to precisely define the phrase "immodest, immoral or indecent liberties." *See e.g., Chapman v. State,* 2001 WY 25, ¶ 28, 18 P.3d 1164, ¶ 28 (Wyo.2001); *Sorenson v. State,* 604 P.2d 1031, 1034–35 (Wyo.1979). Instead, the jury is allowed to apply its common sense by looking at the totality of the circumstances pertaining to the culpability of the accused's conduct. *Chapman,* at ¶ 28.

[¶ 25] In this case, the trial court properly instructed the jury on the elements of taking indecent liberties with a minor, without providing a definition of the phrase "immodest, immoral or indecent liberties." It is, however, clear that the indecent liberties statute punishes inappropriate sexual conduct with children. *Chapman,* at ¶ 28. Consequently, a statement suggesting that providing drugs to children violates § 14–3–105 would be incorrect. "[W]here a prosecutor repeatedly misstates the law to a jury, and thereby plants an erroneous conception which prejudices the defendant, a fair trial may, under certain circumstances, have been denied." *Jones v. State,* 580 P.2d 1150, 1154 (Wyo.1978).

[¶ 26] After carefully reviewing the entire closing argument, we are not convinced that the prosecutor was informing the jury that providing children with drugs and a place to do drugs was a violation of the indecent liberties statute. In addition, we do not believe that the prosecutor was attempting to inject tangential issues, beyond the issue of Burton's guilt or innocence, into the case. In other portions of his argument, the prosecutor made it very clear that Burton was not on trial for his drug activities. The prosecutor

stated, further, that sexual contact between the victim and Burton would constitute immoral and indecent liberties. In addition, the trial court appropriately instructed the jury on the elements of the offense. Consequently, we cannot say that Burton has shown a violation of a clear and unequivocal rule of law or that he was prejudiced by the comment.

### 4. Character Evidence

[¶ 27] Burton next complains that the prosecutor asked the jury to convict him for his bad character rather than on the evidence presented against him. The prosecutor stated:

Now, I know you're probably thinking right now, well, the defendant is not on trial for furnishing drugs to these minors and to these kids. But it has a lot to say about his character. Character has a lot to say about what a person—what a man will try and not try to get away with.

Burton apparently asserts that the evidence of his drug activities was evidence of bad character. He does not, however, contend that the evidence of his drug activities was inadmissible. Burton argues, instead, that the prosecutor violated W.R.E. 404(b) when he asked the jury to infer that Burton acted in conformity with his bad character, which was evidenced by his drug activities, by trying to "get away with" taking indecent liberties with the victim.

[¶ 28] Wyoming Rule of Evidence 404(b) prohibits use of evidence of other bad acts to prove a person's character for the purpose of showing that he acted in conformity with his bad character. *Brower v. State,* 1 P.3d 1210, 1213 (Wyo.2000). That rule provides:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

W.R.E. 404(b).

[¶ 29] The prosecutor's choice of language was not artful. He was, obviously,

courting an objection when he used the term "character." Nevertheless, when the prosecutor's comment is reviewed in the context of his entire closing argument, it is clear that he was not asking the jury to infer that Burton had committed the charged crimes simply because he had committed other bad acts by supplying minors with drugs and a place to use them. Considering the entire record on appeal, we cannot say that Burton has shown a violation of a clear and unequivocal error of law that substantially prejudiced him.

### 5. Attack on Defense Counsel

■ [¶ 30] Burton maintains that the prosecutor improperly attacked defense counsel's trial tactics when he made the following remarks in the rebuttal portion of his closing argument:

> Doesn't it make you a little bit angry, ladies and gentlemen, that [defense counsel] basically makes reference to Alexa Kidd, their only witness, as being the most credible witness that testified in the last two days? And then he wants to refer to Lucas Edwards and Kara Jess as the State's witnesses.
>
> . . .
>
> So don't be angry. Don't let [defense counsel] conjure up anger in your mind that the State is trying to rely on these witnesses as our witnesses, as our friends. They're friends of the defendant.

■ [¶ 31] A prosecutor may not launch personal attacks against defense counsel to inflame the passions and prejudices of the jury. *Leiker v. State,* 994 P.2d 917, 920 (Wyo.1999); *English v. State,* 982 P.2d 139, 148 (Wyo.1999). The general rule was articulated by the United States Supreme in *United States v. Young,* 470 U.S. 1, 10, 105 S.Ct. 1038, 1043, 84 L.Ed.2d 1 (1985):

> It is firmly established that the lawyer should abstain from any allusion to the personal peculiarities and idiosyncrasies of opposing counsel. A personal attack by the prosecutor on defense counsel is improper, and the duty to abstain from such attacks is obviously reciprocal.

*Young,* 470 U.S. at 10, 105 S.Ct. at 1043 (quoting ABA Standards for Criminal Justice 4–7.8, p. 4.97). *See also English,* 982 P.2d at 148 (Wyo.1999).

[¶ 32] In his own closing argument, defense counsel repeatedly stated that the testimony given by the State's witnesses, including Jess, Edwards, and the victim, was inconsistent and unreliable. Defense counsel also argued that defense's alibi witness, Alexa Kidd, was truthful in her testimony. The prosecutor's comments in rebuttal were obviously aimed at countering defense counsel's suggestions that Kidd was credible and the State's witnesses were not. Moreover, he was trying to emphasize that the witnesses called by the State were Burton's friends rather than friends of the State. Taken in context, the prosecutor's comments cannot be classified as personal attacks on defense counsel, and there is no indication that the prosecutor intended to improperly inflame the passions and prejudices of the jury against Burton or defense counsel.

### 6. Vouching for Credibility of Witnesses

■ [¶ 33] Burton claims that the prosecutor improperly vouched for the credibility of the State's witnesses when he made the following statement in the rebuttal portion of his closing argument:

> But [the State's witnesses] were blatantly honest with you about lot of things. They had to admit they were doing drugs.... That's a hard thing to admit.

■ [¶ 34] A prosecutor may not, even when responding to defense arguments, personally vouch for the credibility of the State's witnesses. *Lane v. State,* 12 P.3d 1057, 1065 (Wyo.2000); *Harper v. State,* 970 P.2d 400, 403 (Wyo.1998).

> When the prosecutor asserts his credibility or personal belief, an additional factor is injected into the case. This additional factor is that counsel may be perceived by the jury as an authority whose opinion carries greater weight than their own opinion: that members of the jury might be persuaded not by the evidence, but rather by a perception that counsel's opinions are correct because of his position as prosecutor, an important state official entrusted with enforcing the criminal laws of a sovereign state. While the prosecutor is expect-

ed to be an advocate, he may not exploit his position to induce a jury to disregard the evidence or misapply the law.

*Lane,* 12 P.3d at 1065 (quoting *Barela v. State,* 787 P.2d 82, 83–84 (Wyo.1990)).

[¶ 35] In this case, the comments made by the prosecutor were not improper. He did not personally vouch for the credibility of the witnesses. The prosecutor was simply pointing out that the witnesses had been forthright about their drug use notwithstanding the fact that it was difficult to discuss those matters in a public forum. He drew a reasonable inference from the evidence that the witnesses would have no motive to lie by confessing their drug use because use of drugs is illegal and is not accepted by general society. The prosecutor's comment was not improper.

### 7. *Misrepresentation of Facts*

[¶ 36] Burton asserts that the prosecutor committed misconduct by misrepresenting a fact in the rebuttal portion of his closing argument. He claims that the prosecutor suggested that Burton was a "convicted felon" even though there was no evidence in the record to support that statement. The relevant portion of the trial transcript states:

[PROSECUTOR:] You're going to have to throw all [the States' witnesses'] testimony out, ladies and gentleman, if you're going to believe this Alexa Kidd and that she was the one that spent the night in the closet.

[Kidd is] the one that says [she and Burton are] just friends, but yet she loves the defendant and doesn't even know the defendant's age, a convicted felon for distributing illegal drugs. And they're asking you to believe her testimony over these other kids.

[DEFENSE COUNSEL:] Your Honor, what is this convicted felon? Who are you referring to?

[PROSECUTOR:] I'm referring to the witness.

[DEFENSE COUNSEL:] That's entirely improper.

THE COURT: I think it is. And I'll strike the last comment, Counsel. I don't

believe that was in evidence. I think it was highly inappropriate.

You may continue.

[PROSECUTOR]: Your Honor, I was just—object to that in that I do recall that evidence testified to by their witness. And I guess we can look on the record.

THE COURT: I believe there was a reference to charges. But as to convictions, I don't know. I'm not sure.

[DEFENSE COUNSEL]: Your Honor, perhaps [the prosecutor] was referring to Ms. Kidd's admission that she had been convicted of a drug felony.

[PROSECUTOR]: That's what I'm referring to, Judge.

[DEFENSE COUNSEL]: I thought he was referring to the defendant, Your Honor.

[PROSECUTOR]: No. I was referring to their witness, Alexa Kidd, Your Honor. She testified.

THE COURT: Okay. With that clarification, I'll overrule any objection. I don't know that that was clear as to where the reference was being made at that point in time. I apologize if I did not hear it correctly. And I'll leave it to the jury to recall specifically what counsel's reference was to.

To the extent that it was a reference to Ms. Kidd and her testimony, then I'll set my ruling aside.

You may proceed.

[PROSECUTOR]: Point being, ladies and gentlemen, that they want you to believe Alexa Kidd—she was the one that I was referring to—over all of the other witnesses in trying to provide an alibi for the defendant, somebody that she's indicated that she loves.

[¶ 37] A prosecutor may not misrepresent the evidentiary facts in his closing argument. *See generally Miller v. State,* 830 P.2d 419, 426 (Wyo.1992). Our review of the entire passage quoted above reveals that the prosecutor did not intentionally misrepresent any fact. Although the prosecutor's comment about the "convicted felon" was not articulated very clearly, the matter was clarified during the ensuing colloquy among the

prosecutor, defense counsel, and the court. Their exchange, which took place in front of the jury, made it very clear that the prosecutor was referring to Alexa Kidd, and not Burton, as being a "convicted felon." That reference was entirely in keeping with the evidence presented at the trial. Kidd testified on direct, as follows:

Q. Now, you've told us that you've done quite a few drugs.

A. Yes, sir.

Q. That eventually got you in some trouble, didn't it?

A. Yes. I got felony with intent to deliver on April 6th.

Q. Okay. And you pled guilty to that?

A. Yeah.

The trial court did not commit any error in resolving this matter at trial.

### B. Opinion Testimony

[¶ 38] Burton claims that the trial court erred when it permitted the State to elicit testimony from Detective Kirkendall concerning his opinion of the victim's credibility. The jury has the responsibility to resolve the factual issues, judge the credibility of witnesses, and ultimately determine whether the accused is guilty or innocent. *Newport v. State,* 983 P.2d 1213, 1215 (Wyo. 1999); *Gayler,* 957 P.2d at 860; *Zabel v. State,* 765 P.2d 357, 362 (Wyo.1988). Testimony by an expert witness, concerning his belief that the defendant is guilty of the offense invades the province of the jury and generally mandates reversal of the conviction. *See Stephens v. State,* 774 P.2d 60, 67–68 (Wyo.1989); *see also Newport,* at 1215–16. Therefore, the general rule under Wyoming law is that it is error per se for the State to elicit testimony from an expert witness concerning his opinion of the guilt of the accused. *Stephens,* at 68; *see also Metzger v. State,* 4 P.3d at 905. We do not, however, apply the error per se standard in reviewing a claim that a witness improperly vouched for the credibility of another witness. Instead, when the defendant did not object at trial to the testimony, we apply the plain error standard to review assertions that one witness vouched for the credibility of another. *Newport,* 983 P.2d at 1215.

[¶ 39] The State called Detective Kirkendall to testify at Burton's trial. The detective investigated the victim's report that Burton had sexually assaulted her. The State elicited the following testimony from Detective Kirkendall on direct examination:

Q. Okay. How did you begin your investigation?

A. I contacted [the victim] on October 20th of '98 and asked her to come down for an interview. I took a taped-transcribed statement as far as her recollection of the facts and what had occurred there.

Q. Okay. And that was a taped interview, correct?

A. Yes, it was.

Q. And you heard her testify today?

A. Yes.

Q. Okay. What—Was her testimony consistent with the information she provided you back on October 20th?

A. Yes. There was additional testimony that came out today. The other times that she indicated today on the stand that she awoke, it was the first I heard of that.

Q. Okay. But generally as to what happened to her with the sexual assault, was that the same?

A. Yes.

[¶ 40] In his redirect questioning of Detective Kirkendall, the prosecutor elicited the following testimony:

BY [PROSECUTOR]:

Q. You would say, Detective Kirkendall, that [the victim] elaborated a lot more today than when you spoke to her and tape-recorded her conversation back in October?

A. Yes.

Q. Okay. Would you say that I asked a lot more specific and detailed questions than you did in your interview?

A. She's been taken through the interview process several times now. Perhaps that's helped her recollection. She appears to be out from under the influence of the narcotics that she was then. Perhaps she has a clearer head.

Q. You didn't find her statements to be inaccurate compared to the statements she provided you back in October, though, did you?

A. No.

Q. She just added more information?

A. Correct.

[¶41] Burton claims that, by testifying that the victim's testimony at trial was consistent with the statement she provided during the investigation, Detective Kirkendall impermissibly vouched for the credibility of the victim and gave the impression that he believed Burton was guilty of the sexual assault. We disagree with Burton's interpretation of the detective's testimony. The detective merely stated that the victim's rendition of the events at trial was in harmony with her earlier statements. He did not state that he believed the victim's version of the events or that he believed Burton was guilty of the offenses. Even though the detective's testimony may have had the incidental effect of bolstering the victim's credibility, the trial court did not violate a clear and unequivocal rule of law when it allowed the testimony into evidence at trial. *Curl v. State*, 898 P.2d 369, 374 (Wyo.1995); *Newport*, 983 P.2d at 1215.

### C. Amendment of Information

[27] [¶42] Burton maintains that the trial court erred by granting the State's motion to amend the information shortly before the trial commenced. He claims that the amendment prejudiced his ability to present a defense. On September 17, 1999, the State filed a motion to amend the information to change the date of the sexual assault from "on or about September 5, 1998" to "on or about August 28, 1998." Just prior to the commencement of the trial on September 20, 1999, the trial court heard arguments on the motion. The State asserted that there had been confusion over the date of the alleged assault since the beginning of the investigation and that, while preparing the case, the State discovered that August 28, 1998, was the date of the assault. Defense counsel objected to the amendment, claiming that the amendment would prejudice the defense. Defense counsel asserted that the defense had an alibi witness to present and that the

change of the date may "skew" the case. Defense counsel did not, however, elaborate on how the amendment would "skew" Burton's case. The district court referred to Wyoming Rule of Criminal Procedure 3 and ruled that amending the information to change the date of the alleged offenses would not result in substantial prejudice to the defendant.

[¶43] Wyoming Rule of Criminal Procedure 3(e) governs amendments of information. That rule states:

(e) *Amendment of Information or Citation.* Without leave of the court, the attorney for the state may amend an information or citation until five days before a preliminary examination in a case required to be tried in district court or until five days before trial for a case not required to be tried in district court. The court may permit an information or citation to be amended:

(1) With the defendant's consent, at any time before sentencing.

(2) Whether or not the defendant consents:

(A) At any time before trial if substantial rights of the defendant are not prejudiced.

(B) At any time before verdict or finding if no additional or different offense is charged and if substantial rights of the defendant are not prejudiced.

W.R.Cr.P. 3(e).

[¶44] Wyoming Rule of Criminal Procedure 3(e) grants discretion to a trial judge in deciding whether or not a motion brought by the State to amend the information just prior to trial should be granted. Consequently, we review the trial court's decision by applying our abuse of discretion standard. *See generally* W.R.Cr.P. 3(e). In deciding whether or not the trial court abused its discretion, this court must "determine whether the trial court could reasonably conclude as it did and whether any facet of its ruling was arbitrary or capricious." *Cook v. State*, 7 P.3d 53, 58–59 (Wyo.2000) (quoting *Vaughn v. State*, 962 P.2d 149, 152 (Wyo.1998)).

[¶45] Burton has made no showing that he was prejudiced by the amendment to the

information. He presented his alibi witness, Alexis Kidd, at the trial. Although she could not identify the exact date, Kidd testified that she recalled a night at the end of August of 1998, when the victim spent the night in the apartment complex where Burton resided. In contrast to the victim's testimony, Kidd testified that the victim stayed in Lucas Edwards' apartment rather than at Burton's apartment. Kidd also testified, in relevant part, as follows:

PROSECUTOR: Okay. Now, going back to the end of August of 1998, I was confused. Do you know what day of the week August 28th is?

[JESS]: No. I just know that, when she was there, it was close—It was like Friday or Saturday. It was on the weekend.

Q: Okay. And your testimony is [the victim] did or did not spend the night at [Burton's] apartment?

A. She did not.

Q. She never spent the night there?

A. No, not to my—No.

Q. Now, are you telling us that you spent every night with [Burton]—

A. Yes.

Q. —back in August of 1998?

A. Yes. I lived there. And if I wasn't there, he was with me at my mother's.

Q. So he was constantly with you?

A. Yes.

There is no indication that Kidd would have been able to pinpoint the date any more precisely if the information had not been amended. The charge of "on or about August 28, 1998" did not hinder Burton's ability to present his alibi defense.

[¶ 46] Burton claims that the amended information also interfered with his ability to cross-examine the victim's mother regarding the date of the offense. The record does not, however, bear out Burton's assertion. The victim testified that her parents were "out of town" when the offense occurred. The defense was able to elicit testimony from the victim's mother that she and her husband were "in town" on the weekend of August 28, 1998. The defense was able, therefore, through its cross-examination of the victim's mother, to show inconsistencies between the testimony of the victim and her mother. The defense was not hindered in its ability to impeach the State's witnesses, and Burton has not shown that he was substantially prejudiced by the amendment.

## CONCLUSION

[¶ 47] The prosecutor did not commit misconduct in his closing argument because his statements were appropriate and they did not prejudice Burton. Moreover, Detective Kirkendall's testimony did not include an improper statement concerning his opinion as to the credibility of the victim or Burton's guilt. Finally, the trial court did not err by allowing the State to amend the information prior to the trial.

[¶ 48] We affirm Burton's conviction.

VOIGT, Justice, dissenting, with which GOLDEN, Justice, joins.

[¶ 49] I would reverse because the prosecutorial misconduct in closing argument was simply too egregious and too filled with potential prejudice to allow this conviction to stand. While I agree with the majority's recitation of the standard of review, I would reach a different result through its application. The prosecutorial misconduct in this case created a substantial risk of miscarriage of justice.

[¶ 50] We have repeatedly recognized the " 'great latitude' " allowed counsel in closing argument. *Helm v. State*, 1 P.3d 635, 639 (Wyo.2000) (quoting *Montoya v. State*, 971 P.2d 134, 136 (Wyo.1998)). At the same time, we have cautioned that argument must be kept within the evidence, and that " '[s]tatements calculated to inflame, prejudice or mislead the jury are not permitted.' " *Helm*, 1 P.3d at 639–40 (quoting *Montoya*, 971 P.2d at 136). And while prosecutors are no more limited in closing than are defense counsel, prosecutors have the additional duty to seek justice, not just to seek a conviction. *Browder v. State*, 639 P.2d 889, 893 (Wyo. 1982). In particular, a prosecutor may not appeal to the jury's sense of duty to help law enforcement by convicting the defendant nor may he appeal to the jury's passion and prejudice. *Gayler v. State*, 957 P.2d 855, 861

(Wyo.1998). A prosecutor's closing argument must not inject issues into the trial that are broader than the guilt or innocence of the accused under the controlling law, thereby diverting the jury from its duty to decide the case on the evidence. *Jeschke v. State*, 642 P.2d 1298, 1302 (Wyo.1982). A prosecutor "is not allowed to urge the jury to convict an accused on any basis other than that the evidence shows guilt beyond a reasonable doubt." *Gayler*, 957 P.2d at 861.

[¶ 51] The central theme of these admonitions is that closing arguments must be premised upon the evidence. *McLaughlin v. State*, 780 P.2d 964, 970 (Wyo.1989) (*quoting Schmunk v. State*, 714 P.2d 724, 742 (Wyo. 1986)). The purpose of closing argument is to allow counsel to review the evidence and to suggest to the jury reasonable inferences that can be drawn from that evidence. *McLaughlin*, 780 P.2d at 970 (*quoting Schmunk*, 714 P.2d at 742); *Leiker v. State*, 994 P.2d 917, 919 (Wyo.1999).

[¶ 52] Despite these clear principles of law, the prosecutor in the instant case began his closing argument with the following statements:

Ladies and gentlemen, the State understands that we have just introduced to you a completely and hopefully, an unknown world that's going on out there right here in our community. It's the drug world. You heard a lot of testimony about these young kids and the behavior that they were involved with. But ask yourself, ladies and gentlemen, would they ever get the opportunity to be doing these kinds of things if not for the likes of the Juan Burtons of the world?

[¶ 53] This argument was a direct invitation to the jury to convict the appellant, not because the elements of the crimes had been proved, but because the community needed to be protected from people like the appellant. The impropriety of this argument was then magnified when, shortly thereafter, the prosecutor added the following equally troublesome statement:

Now, I know you're probably thinking right now, well, the defendant is not on trial for furnishing drugs to these minors and to these kids. But it has a lot to say

about his character. Character has a lot to say about what a person—what a man will try and not try to get away with.

[¶ 54] W.R.E. 404(a) provides that "[e]vidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion[.]" The purpose of this rule is to prevent the jury from convicting a defendant based on the assumption that he must have acted in conformity with his " 'bad character,' " rather than on proof of the elements of the crime. *Solis v. State*, 981 P.2d 28, 30 (Wyo.1999) (*quoting Brown v. State*, 953 P.2d 1170, 1175–76 (Wyo.1998)). Character evidence is only admissible if it falls within one of the exceptions found in W.R.E. 404—that is, if it tends to prove something other than propensity to commit the charged crime—and if its relevancy outweighs the risk of prejudice. *Solis*, 981 P.2d at 30 (*quoting Brown*, 953 P.2d at 1175–76). Surely, what a prosecutor cannot accomplish with the introduction of evidence, he cannot accomplish through closing argument.

[¶ 55] The charged crimes in this case were first-degree sexual assault and indecent liberties with a minor. While the prosecutor had the right to alert the jury to proper inferences that could be drawn from the circumstances surrounding the alleged crimes, including the temporally related drug activities of the defendant and the victim, he did not have the right to ask the jury to convict the appellant (1) to help eradicate the "drug world," or (2) because of the appellant's character. In the context of the prosecutor's entire closing argument, especially including the other portions of that closing argument quoted in the majority opinion, I would conclude that this was an attempt to convict the appellant for reasons other than commission of the charged crimes.

[¶ 56] Finally, I would reverse because there is a reasonable possibility that the verdict may have been more favorable to the appellant had these improper arguments not been made. *See Gayler*, 957 P.2d at 862 and *Browder*, 639 P.2d at 895. There was no physical evidence of the alleged crimes and the testimony varied greatly from one wit-

ness to the next. The jury found the appellant not guilty of first-degree sexual assault, but guilty of indecent liberties with a minor. While such a verdict is not necessarily inconsistent, it raises a red flag in the instant case because of the prosecutor's tendency in closing argument to blur the line between indecent liberties and providing drugs to minors.

[¶ 57] We have recently described the factors to be considered when evaluating claims of prosecutorial misconduct:

Among the factors to be considered are the nature and gravity of the error, the prosecutor's duty to do justice and refrain from improper methods, the likely impact on the average juror, the quality of the prosecution's case, and the closeness of the case.

*Warner v. State,* 2001 WY 67, ¶ 23, 28 P.3d 21, 29 (Wyo.2001) (*citing Earll v. State,* 2001 WY 66, ¶ 16, 29 P.3d 787, 792 (Wyo.2001)). In the present case, all of these factors tend to support reversal of the conviction. In such case, we cannot hide behind our inability to know for certain that the misconduct influenced the verdict.

"If, when all is said and done, the conviction is sure that the error did not influence the jury, or had but very slight effect, the verdict and the judgment should stand, except perhaps where the departure is from a constitutional norm or a specific command of Congress. But if one cannot say, with fair assurance after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected. The inquiry cannot be merely whether there was enough to support the result, apart from the phase affected by the error. It is rather, even so, whether the error itself had substantial influence. If so, or if one is left in grave doubt, the conviction cannot stand."

*Warner,* 2001 WY 67, ¶ 22, 28 P.3d at 28 (*quoting Kotteakos v. United States,* 328 U.S. 750, 763–65, 66 S.Ct. 1239, 1247–48, 90 L.Ed. 1557 (1946)).

[¶ 58] The appellant's right to a fair trial was prejudiced and his conviction should be reversed.